IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RICHARD DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Jury Trial Demanded |
| CITY OF ST. LOUIS, MISSOURI, | ) |
| | ) |
| RICK DUDLEY, | ) |
| | ) |
| THOMAS JOHNSON, | ) |
| | ) |
| CARMEN MILLER, and | ) |
| | ) |
| ESTHER WALLER, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW, Plaintiff Richard Davis, by and through counsel, and for his cause of action against the City of St. Louis, Missouri, Rick Dudley, Thomas Johnson, Carmen Miller, and Esther Walle states:

## INTRODUCTION

1. This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendants for committing acts, under color of law, in violation of Adrian Smith's rights secured under the Constitution and laws of the United States. This is also an action for wrongful death pursuant to Missouri's Wrongful Death Act and associated statutes, including but without limitation, Mo. Rev. Stat. §§ 537.080 and 537.090.

1

2. Ashley Davis died due to the defendants failure to properly monitor her and provide timely medical care after she suffered a cardiac arrest while a detainee held at the Saint Louis City Justice Center. Ashely Davis was a pretrial detainee who had been placed on close-observation orders due to drug use, which mandated she be observed every fifteen minutes to ensure her well-being.  Defendants failed to check on her for at least twenty minutes even though her cell mate had tried to get their attention after Ashely Davis had collapsed and was not breathing.  This led to a delay of ten minutes between the time Ashely Davis collapsed and the administration of CPR which led to her death.

## **PARTIES**

3. Plaintiff Richard Davis is the father of decedent Ashely Davis and is a resident of the State of Missouri; he is a proper party to bring these claims under 42 U.S.C. §§ 1983 and 1988 and Missouri's wrongful death statute §537.080.

4. Defendant City of St. Louis, Missouri is a political and geographic subdivision of the State of Missouri and is organized as a constitutional charter city under Article VI, section 19 of the Missouri Constitution.

5. Defendant City of Saint Louis is the employer of Defendants Carmen Miller, Esther Waller, Thomas Johnson, and Rick Dudley.

6. Defendant Carmen Miller is an individual and a resident of the State of Missouri who at all times herein was a guard at the Saint Louis City Justice Center.

7. Defendant Esther Waller is an individual and a resident of the State of Missouri who at all times herein was a guard at the Saint Louis City Justice Center.

8. Defendant Thomas Johnson is an individual and a resident of the State of Missouri who at all times herein was a guard at the Saint Louis City Justice Center.

9. Defendant Rick Dudley is an individual and a resident of the State of Missouri who at all times herein was a guard at the Saint Louis City Justice Center.

## JURISDICTION AND VENUE

10. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 as the complaint alleges violations of civil rights protected by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear Plaintiff's state law wrongful death claims in that all claims made herein are so related to each other that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because it is a judicial district where at least on defendant resides and where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

13. At all relevant times herein, all parties are residents of the State of Missouri and therefore this Court has personal jurisdiction over the parties hereto.

## FACTS COMMON TO ALL COUNTS

14. The St. Louis Metropolitan Police Department arrested Ashley Davis on August 4, 2022 on several bench warrants and transferred her to the Saint Louis City Justice Center at 200 South Tucker, Saint Louis, Missouri (STLJC).

15. STLJC is operated by the City of St. Louis.

16. August 4, 2022. Nurse Knox requested that Ashley D. be placed in a Clinical Opiate Withdrawal Scale, also known as C.O.W.S., ( C.O.W.S. is designed to accurately measure a

patient's ongoing detox and withdrawal from opioids, enabling attending clinicians to respond to changes in a patient's symptoms with appropriate medication if required) due to recent drug use.

17. The STLJC medical staff placed Ashley Davis on Close-Observation due to substance abuse withdrawal, commonly referred to as "detox" inmates.

18. STLJC Prisoner Processing's protocol regarding detox prisoners is that the staff are required to check on the detox prisoners every fifteen minutes to make sure that they are not experiencing health problems.

19. 08/04/22 At 1:03 A.M., Ashley D. was again seen by Nurse Hatcher who advised that Ashley D. wasn't fit for confinement due to the one inch stab wound to her back, a swollen nose bridge and breathing issues.

20. On August 5, 2022, Ashely Davis was taken to South City Hospital where she was treated for a stab wound to her left check wall.

21. Ashley Davis was brought back to STLJC on August 5, 2022.

22. The STLJC medical staff placed Ashley Davis back on Close-Observation ("detox") after she returned from South City Hospital.

23. On August 7, 2022, Ashely Davis collapsed onto the floor in her cell (Cell #5), was not breathing and started foaming at the mouth.

24. At the time of Ashley Davis' collapse defendants Rick Dudley, Thomas Johnson, Carmen Miller, and Esther Waller were on duty on Ashely Davis' floor and were responsible for performing her 15 minute close-observation checks.

25. Ashley Davis' need for medical attention after she collapsed was so obvious that a layperson would easily recognize her medical need.

4

26. Ashley Davis' cell mate Aalayah Brene' Jackson recognized her need for medical attention.

27. Aalayah Brene' Jackson attempted to draw the attention of STLJC staff including banging on the cell door for minutes before anyone responded.

28. After several minutes, Defendants Thomas Johnson and Esther Waller responded to Aalayah Brene' Jackson's pleas.

29. Defendant Esther Waller notified Defendants Rick Dudley and Carmen Miller.

30. Defendants Thomas Johnson observed that Ashley D. was in need of medical aid; rather than give aid to Ashely Davis, he removed Aalayah Brene' Jackson from the cell and placed her in a different cell.

31. Defendant Rick Dudley notified the STLJC medical staff and called 911.

32. When the medical staff was notified they were simply told that Ashely Davis was "having trouble breathing" and "no code was called".

33. Officer Derek Cayabyab, who was employed by the St. Ann police department and was at the STLJC to pick up a prisoner, listened to Aalayah Jackson's pleas and provided medical assistance to Ashely Davis – he observed that she was not breathing and had a very slight pulse and started CPR until the STLJC medical staff took over.

34. Nurse Matthew Goodman responded to Ashley Davis's cell after he "got a call asking to check on patient stating "pt having trouble breathing. no code was called"; he found Ashley Davis was "unconscious (non-responsive)", "drooling", had "started to turn blue", had swelling

5

of the face, and that he "checked for pulse and didn't find it"; he called for additional medical staff to the floor for a "Code #3" which means a "Medical Emergency" and to bring oxygen.

35. The medical staff performed CPR until the EMS arrived, after which the EMS "took over" and the medical staff "just assisted".

36. The public-safety answering point (PSAP) call was received by the St. Louis Fire Department- EMS at 14:57:28.

37. The Saint Louis Metropolitan Fire Department Hook and ladder 2 was dispatched at 14:58:36 and arrived at STLJC at 15:02:21.

38. The Saint Louis Metropolitan Fire Department EMS crew was dispatched for a "cardiac arrest" at 14:59:16, arrived at the STLJC at 15:05:05, and arrived at Ashely Davis at 15:07:00.

39. Upon their arrival they found Ashley D. pulseless and apneic (temporal cessation of breathing) laying supine in the holding cell. The firemen started CPR with the LUCAS (provides mechanical chest compressions) device and ventilating with the Bag Valve Mask (BVM is a hand-held device commonly used to provide positive pressure ventilation to patients who are not breathing or not breathing adequately).

40. The EMS patient care record for Ashley Davis indicates that indicates that:

    a. Staff said no one had checked on Ashley Davis for 20 minutes;

    b. Staff "found her dead in the cell";

    c. 10 minutes elapsed from the time Ashley Davis collapsed until 911 was called;

    d. The 911 call was received by dispatch at 14:57:28 pm;

    e. 10 minutes elapsed between the collapse of Ashley Davis and the initiation of CPR;

    f. a defibrillator was first used on Ashely Davis at 15:06 pm.

6

      g.   When EMS arrived Ashely Davis was cyanotic and her skin was cold to the touch.

41. Ashley Davis collapsed approximately 19 minutes before a defibrillator was used on her.

42. Had the defendants checked on Ashely Davis every 15 minutes, instead of not checking on her for 20 minutes, she would have received CPR at least five minutes earlier than she had.

43. Had Defendant City of St. Louis provided an automated external defibrillator ("AED") at the STLJC staff could have defibrillated Ashley Davis much earlier than the EMS crew did – at least as early as when CPR was started on her.

44. Had the defendants timely checked on Ashley Davis and had they had access to a AED, she could have received defibrillation at least 14 minutes earlier than she received the fire department.

45. An automated external defibrillator (AED) is a medical device designed to analyze the heart rhythm and deliver an electric shock to victims of ventricular fibrillation to restore the heart rhythm to normal.[1] The AED is compact, lightweight, portable, battery operated, safe, and easy to use. *Id.*

46. Ventricular fibrillation is the uncoordinated heart rhythm most often responsible for sudden cardiac arrest.[2] Sudden cardiac arrest occurs when ventricular fibrillation takes place or when the heart stops beating altogether. *Id.* Without medical attention, the victim collapses, loses consciousness, becomes unresponsive, and dies. *Id.* Many victims have no prior history of heart disease and are stricken without warning. *Id.* Chances of survival from sudden cardiac death diminish by 7 – 10 percent for each minute without immediate CPR or defibrillation. *Id.* After

---

[1] Saving Sudden Cardiac Arrest Victims in the Workplace Automated External Defibrillators, OSHA 3185-09N 2003, https://www.osha.gov/sites/default/files/publications/osha3185.pdf.
[2] *Id.*

10 minutes, resuscitation rarely succeeds. *Id.*  A heart rhythm in ventricular fibrillation may only be restored to normal by an electric shock. *Id.*

47. OSHA recommends that AEDs should be conveniently installed to ensure response within 3-5 minutes.[3]

48. Workers can easily be trained to: Recognize sudden cardiac arrest and notify EMS personnel, Perform cardiopulmonary resuscitation (CPR), Provide early defibrillation with an AED, and Care for the victim until EMS personnel arrive.[4]

49. AEDs only cost $1200-$3000 per device.[5]

50. Research indicates that the supply of AED's in correctional facilities results in a four fold reduction in the time the AED is administered versus waiting on defibrillators brought by external EMS crews.[6]

51. The lack of timely medical care led to Ashley Davis suffering an anoxic brain injury due to her brain being deprived of oxygen and caused her death.

52. The conduct of the defendants was grossly incompetent and inadequate

53. EMS took Ashley Davis by ambulance to SSM Health Saint Louis University Hospital ("SLUH") at 15:30:00.

54. SLUH gave Ashely Davis diagnoses including: cardiac arrest, seizures, substance abuse, NSTEMI, ventricular fibrillation, elevated liver enzymes, lactic acidosis, hypotermia, acute respiratory failure, encephalopathy and anoxic brain injury.

55. A drug screen at SSM showed positive for fentanyl, methamphetamines, benzodiazepines and cannabinoids.

56. On September 3, 2022, Ashley D. was transported to BJC Evelyn's House (Hospice Care)

---

[3] *Id*.
[4] *Id*.

from SLU Hospital by Abbott Medical Services.

57. On September 9, 2022, at 2:26 P.M. Ashley D. was pronounced deceased at Evelyn's House.

58. Ashley Davis never regained consciousness from the time she collapsed at the STLJC until the time of her death.

59. A large number of the STLJC inmates are suffering from drug dependencies and withdrawals which indicates an increased likelihood of medical emergencies.

60. At least ten inmates have died at the STLJC since 2020[7].

# COUNT I - FOR VIOLATIONS OF THE FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANTS CARMEN MILLER, ESTHER WALLER, THOMAS JOHNSON, AND RICK DUDLEY

61. Plaintiff restates and realleges the foregoing paragraphs of the Complaint as though set forth fully herein.

62. This count is brought pursuant to 42 U.S.C. 1983 for deprivation of rights protected by the Fourteenth Amendment to the United States Constitution against Defendants Carmen Miller, Esther Waller, Thomas Johnson, and Rick Dudley.

63. Ashely Davis suffered from a medical condition that the STLJC medical staff diagnosed

---

[5] *Id*.

[6] Death in correctional facilities: Opportunities for automated external defibrillation, Roessler B, Fleischhackl R, Fleischhackl S, Singer F, Mittlboeck M, Fachberger J, Malzer R, Koller A, Lang G, Foitik G, Hoerauf K. Resuscitation. 2007 Jun;73(3):389-93. doi: 10.1016/j.resuscitation.2005.12.017. Epub 2007 Feb 6.PMID: 17287061

[7] City of Shadows: Oversight overdue as St. Louis jail deaths prompt long-awaited battle for independence, transparency, Mark Maxwell, November 20, 2023, https://www.ksdk.com/article/news/local/st-louis-jail-deaths-prompt-long-awaited-battle-for-independence-transparency/63-7736900e-0865-462c-8d39-17f8b811e91a

requiring close observation including 15-minute monitoring.

64. Defendants were aware that Ashely Davis required 15-minute monitoring.

65. Defendants deliberately disregarded the order to provide Ashely Davis the required 15-minute monitoring.

66. Ashely Davis suffered from a medical condition so obvious that even a layperson would easily recognize the necessity for a doctor's attention in that she had collapsed on the floor, was foaming at the mouth and was not breathing.

67. Defendants had knowledge of Ashely Davis' medical condition in that Ashley Davis' cellmate Aalayah Brene' Jackson notified them of Ashley Davis' condition.

68. Defendants deliberately disregarded the pleas of Aalayah Brene' Jackson to provide aid to Ashley Davis for several minutes which deprived Ashely Davis of required medical assistance.

69. Defendants failed to administer CPR or other aid to Ashley Davis after they were aware of her need for medical care.

70. Defendants deliberately failed to timely respond to Ashely Davis' medical condition after they had knowledge of Ashley Davis' condition.

71. When defendant's finally responded to Aalayah Brene' Jackson's pleas they failed to adequately notify the medical staff by announcing it as an medical emergency ("code 3"), rather, they simply told the medical staff that Ashley Davis was having trouble breathing  without announcing she had stopped breathing, was nonresponsive, or that she was foaming at the mouth, this resulted in the medical staff only bringing a blood pressure cuff and oxygen meter rather than oxygen, ventilating equipment and a defibrillator, which caused additional delay in the treatment of Ashely Davis.

72. Defendants' failure to properly closely observe Ashely Davis and their failure to provide

medical care in a timely manner were in violation of Ashely Davis' right to due process under the Fourteenth Amendment.

73. Defendants were deliberately indifferent to Ashley Davis' serious medical needs.

74. As a direct and proximate result of the defendants' actions, Ashely Davis died on September 9, 2022.

75. As a result of defendants' actions, Ashley Davis suffered pain and suffering and a decline in the quality of her life between the time the Defendants failed to timely provide medical treatment and the time of her death.

76. As a result of defendants' actions, Plaintiff Richard Davis lost the companionship, comfort, services, counsel, guidance and support of his daughter Ashley Davis and incurred funeral expenses.

77. The defendants' acted intentionally, maliciously, with evil motive, with reckless indifference, and/or with callous indifference to federally protected rights of others, and to the health, safety and welfare of Ashley Davis, thereby warranting an award of punitive and exemplary damages against each said Defendant.

78. Plaintiff is entitled to an award of attorney's fees pursuant to 42 U.S.C. §1988(b).

## COUNT II - VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. §1983 AGAINST DEFENDANT CITY OF SAINT LOUIS, MISSOURI

79. Plaintiff restates and reallege the foregoing paragraphs of the Complaint as though set forth fully herein.

80. This count is brought pursuant to 42 U.S.C. 1983 for deprivation of rights protected by the Fourteenth Amendment to the United States Constitution against Defendants City of St. Louis, Missouri for allowing policies, practices and customs which were the cause of Ashely

Davis' death pursuant to *Monell v. N.Y. Dep't of Soc. Svcs*, 436 U.S. 658 (1978).

81. Defendant City of St. Louis was the supervisor of the individual defendants at all times relevant herein and had a duty to properly supervise, manage and train employees, particularly in training those employees the proper methods of recognizing and responding to the serious medical needs of the inmates.

82. Defendant City of St. Louis has the policy, practice or custom of inadequately training its employees to respond to medical emergencies, including drug overdose and cardiac arrest. equipping its correctional staff to respond timely to the opioid crisis.

83. Defendant City of St. Louis further has a policy, practice, or custom of failing to provide equipment necessary to respond to medical emergencies including AEDs.

84. Defendant City of St. Louis' failure to properly supervise, manage and train officers on the proper methods of identifying and responding to the serious medical needs of inmates directly caused the death of Ashely Davis.

85. Defendant City of St. Louis' failure to properly supervise, manage and train officers to ensure that they properly performed close-observation checks on its detox inmates directly caused the death of Ashely Davis.

86. Defendant City of St. Louis' failure to provide equipment necessary to respond to medical emergencies including AEDs directly caused the death of Ashely Davis.

87. Defendants' failure to properly closely observe Ashely Davis and their failure to provide medical care in a timely manner were in violation of Ashely Davis' right to due process under the Fourteenth Amendment.

88. Defendants were deliberately indifferent to Ashley Davis' serious medical needs.

89. As a direct and proximate result of the defendants' actions, Ashely Davis died on

September 9, 2022.

90. As a result of defendants' actions, Ashley Davis suffered pain and suffering and a decline in the quality of her life between the time the Defendants failed to timely provide medical treatment and the time of her death.

91. As a result of defendants' actions, Plaintiff Richard Davis lost the companionship, comfort, services, counsel, guidance and support of his daughter Ashley Davis and incurred funeral expenses.

92. The defendants' acted intentionally, maliciously, with evil motive, with reckless indifference, and/or with callous indifference to federally protected rights of others, and to the health, safety and welfare of Ashley Davis, thereby warranting an award of punitive and exemplary damages against each said Defendant.

93. Plaintiff is entitled to an award of attorney's fees pursuant to 42 U.S.C. §1988(b).

## COUNT III – WRONGFUL DEATH AGAINST ALL DEFENDANTS PURSUANT TO RSMo. §537.080

94. Plaintiff restates and realleges the foregoing paragraphs of the Complaint as though set forth fully herein.

95. This count is brought pursuant to Section 537.080 R.S.Mo.

96. Plaintiff Richard Davis is the father of the deceased Ashely Davis.

97. Defendants owed a duty of care to Ashely Davis to provide her adequate medical care as set under the Fourteenth Amendment to the US Constitution as well as by Section 221.120 R.S.Mo. which requires jailers to provide medical care to prisoners in need of medical care.

98. Defendants breached their duty of care to Ashley Davis by failing to properly conduct 15

minute observations to ensure her well-being, by ignoring the pleas of her cellmate that she needed medical attention, by failing to provide medical assistance to Ashely Davis, and by failing to properly notify the jail medical staff the seriousness of her situation.

99. Defendant's actions were made with malice and in bad faith.

100. As a direct and proximate result of the defendants' actions, Ashely Davis died on September 9, 2022.

101. As a result of defendants' actions, Ashley Davis suffered pain and suffering and a decline in the quality of her life between the time the Defendants failed to timely provide medical treatment and the time of her death.

102. As a result of defendants' actions, Plaintiff Richard Davis lost the companionship, comfort, services, counsel, guidance and support of his daughter Ashley Davis and incurred funeral expenses.

103. The defendants' acted intentionally, maliciously, with evil motive, with reckless indifference, and/or with callous indifference to federally protected rights of others, and to the health, safety and welfare of Ashley Davis, thereby warranting an award of punitive and exemplary damages against each said Defendant.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues.

WHEREFORE, Plaintiff Richard Davis prays the court enter Judgment in his favor against the defendants City of St. Louis, Missouri, Rick Dudley, Thomas Johnson, Carmen Miller, and Esther Walle, jointly and severally, for damages to be determined at trial including economic, non-economic, and compensatory damages, for punitive damages, for his costs and attorneys fees incurred herein, for pre and post judgment interest, and for other such relief as the

court deems just and proper.

                                                Respectfully submitted,

                                                **KASPER LAW FIRM, LLC**

                                                By: */s/ Kevin J. Kasper*

                                                Kevin J. Kasper, #52171MO
                                                Ryan P. Schellert, #56710MO
                                                3930 Old Hwy 94 South - Suite 108
                                                St. Charles, MO 63304
                                                Ph: 636-922-7100
                                                Fax: 866-303-2874
                                                Email: KevinKasper@KasperLawFirm.net
                                                Email: RyanSchellert@KasperLawFirm.net
                                                *ATTORNEYS FOR PLAINTIFF*